GARY M. RESTAINO
United States Attorney
District of Arizona
GAYLE L. HELART
California State Bar No. 151861
Email: Gayle.Helart@usdoj.gov
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 24-5237-mj |
| Plaintiff, | |
| v. | **MOTION FOR DETENTION** |
| Donald Kirk Michael, | |
| Defendant. | |

The United States of America, by and through its attorneys, hereby moves this Honorable Court to detain the defendant prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the defendant's risk of flight.

Over a period of 18 months, the defendant and his co-conspirators, Andrew Wolf and Kray Strange,[1] operated an elaborate online child exploitation catfishing scheme to entice minor boys to self-produce sexually explicit images and send them to the defendants

---

[1] Notably, before the defendant was identified as a participant in this scheme, his co-conspirators were charged in a separate indictment with conspiracy to manufacture child pornography and related offenses in EDPA Criminal No. 22-35-MAK, *United States v. Andrew Wolf, et al*. Both co-conspirators were ordered detained pending trial after their initial appearances in EDPA. Both ultimately entered open guilty pleas to the Indictment. In 2023, Wolf was sentenced to terms of 466 months' imprisonment (nearly 39 years), and Strange was sentenced to 33 years' imprisonment.

over the Internet. At the time, the defendant had been a youth baseball coach for nearly 20 years in Northern Virginia, and regularly bragged to his co-conspirators about his access to minor boys and engaging in hands-on abuse of some of his players by drugging them on overnight trips. Wolf was in his eighteenth year as a middle school teacher at a private school in Philadelphia, and Strange was a young adult living in Carthage, New York. Together, the three targeted boys with large social media followings, such as Little League World Series players and child Tik Tok stars, as well as dozens of Wolf's own boy middle school students. Throughout their years of communications (which amount to more than 300 pages), on a near daily basis, the defendant and his co-conspirators also discussed their shared sexual interest in children and traded images and videos of child sexual abuse material (CSAM).

The defendant described his preferred age of boys to whom he was sexually attracted as 12 to 13 years old (the exact age range of boys he chose to surround himself with by coaching youth baseball), and, on one occasion, the defendant told Wolf, "I should have been a teacher… I only get to see the baseball ones… I can't say I separate it too well with baseball – it's all I think about when I'm with them!!!"

Furthermore, evidence uncovered during the course of this investigation demonstrates that the defendant remains involved in the online world of child exploitation, continuing to operate online accounts in which he purports to be a minor girl to entice boys to self-produce child pornography and send the images to him.

The defendant is charged for his role in these offenses in an Indictment issued by a federal grand jury sitting in the Eastern District of Pennsylvania (EDPA), where the defendant has no community ties. As a result, the defendant faces a statutory maximum of 110 years' imprisonment, a mandatory minimum sentence of 15 years' imprisonment, and sentencing guidelines that call for life imprisonment. The defendant's lack of community ties to EDPA significantly increases his risk of flight. For all these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no

combination of conditions will assure his appearance for trial or the safety of the community, and he should be detained.

### A. FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

#### 1. Probable Cause and the Evidence in this Case

There is probable cause to believe, based on the Indictment issued by the federal grand jury in EDPA on July 18, 2024, that the defendant has committed the offenses of conspiracy to manufacture child pornography, in violation of 18 U.S.C. § 2251(a), conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2), distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

The evidence in this case is strong. From as early as April 13, 2020 through the federal arrest of co-conspirator Andrew Wolf in EDPA on October 7, 2021, the defendant and his co-conspirators carried out their child exploitation catfishing scheme and traded child sexual abuse material depicting the children they successfully victimized, as well as other videos and images depicting children engaged in sexually explicit conduct and being sexually abused by adults.

The evidence of the conspiracy includes thousands of Telegram messages over hundreds of pages, which were extracted from Wolf's cell phone pursuant to a federal search warrant. During these communications, the parties exchanged approximately 150 image/video files.[2] On Telegram, the defendant used the display name "Baseball Fun" and

---

[2] Due to the files being extracted from Wolf's device in airplane mode (rather than connecting to the Internet and risking destruction of evidence by another Telegram user having

username "@Rmurph" (the first initial and portion of last name of one of the defendant's former youth baseball players). Throughout his communications with Wolf, the defendant shared specific details pertaining to his geographic location (being transferred by his employer from Northern Virginia to Arizona) and travel youth baseball coaching in Northern Virginia. These details were confirmed to be accurate through investigation. Via Telegram, the defendant also shared a screenshot with Wolf, which included the name of an Instagram account that he used to bait minor boys while purporting to be a 13-year-old girl ("steph_turner_2006"). Through investigation, FBI Philadelphia determined that the Instagram account was registered using the defendant's longtime phone number. The defendant's iPhone was seized and searched pursuant to a federal search warrant executed on February 21, 2024, and forensic examination of the device revealed that the unique Instagram user id and the username for this Instagram account were saved in the Keychain feature of the defendant's phone, conclusively linking the defendant to the account.

Throughout their Telegram communications, Wolf and the defendant discussed their shared sexual interest in minor boys, discussed and exchanged images of child pornography, and discussed and strategized "baiting" minor boys, with the assistance of "Alex" (Kray Strange), to self-produce images of child pornography and transmit them over the Internet, including Wolf's own middle school students, Little League World Series players, and others. In the Telegram chat, Baseball Fun and Wolf openly discussed "Alex" (Strange) and his efforts to obtain sexually explicit images and videos from minors by "catfishing" or "baiting" them. In order to do this, Strange assumed a minor girl persona and communicated directly with victims via Instagram and Snapchat. Baseball Fun also made multiple suggestions of specific tactics Strange could use to bait Wolf's students, particularly methods of "blackmail" or sextortion.

---

already deleted the messages), law enforcement can only view the content of a small portion of these files. The others display as "empty" files in the forensic extraction. Of the approximately 31 files whose content could be viewed, approximately 19 depicted child pornography.

The following exchange from January 19, 2021, in which the defendant and Wolf discuss victimizing a 13-year-old student at Wolf's school,³ is just one example taken from hundreds of pages of Telegram messages of a similar nature demonstrating how the defendant and his co-conspirators carried out their scheme:

| | | |
|---|---|---|
| Wolf: | | alex [co-conspirator Kray Strange] successfully baited a 7th grader at my school !!!!!!!!! [Sends now empty image file] |
| **Defendant**: | | oh shit - he's cute |
| Wolf: | | Yessir |
| **Defendant:** | | do you know him or is he just in your school? |
| Wolf: | | i know him a little bit but he hasn't been my student yet...next year i'll have him...he was too dumb to be in my 6ᵗʰ grade class last year lol |
| **Defendant:** | | hahaha - love the dumb ones |
| Wolf: | | [Sends now empty image file] |
| **Defendant:** | | oh, he's a baseball boy too |
| Wolf: | | yes he is! [Sends now empty image file] |
| **Defendant:** | | very nice |
| Wolf: | | [Sends now empty image file] |
| **Defendant**: | | nice body type too 😊 |
| Wolf: | | i wanna rape him with you so bad right now |
| **Defendant**: | | is it possible? |
| Wolf: | | i dunno. ur the expert ;) |
| **Defendant**: | | well, it's possible - but do you want him to be aware or not? |
| Wolf: | | either way...however we can get him... [Sends now empty image file] |
| **Defendant**: | | that's the kid? |
| Wolf: | | yep |

---

³ This child was identified during the course of the investigation, along with 12 more of Wolf's current and former middle school students who were victimized by this scheme, and the child and his parents identified sanitized still images of the child engaged in sexually explicit conduct, which were recovered from Wolf's phone.

- 5 -

| | | |
|---|---|---|
| 1 | **Defendant:** | nice- so, is it big? |
| 2 | Wolf: | [Sends now empty image file] |
| | Wolf: | he wasn't lying |
| 3 | | Wonder if he's the biggest of the 7th grade |
| 4 | **Defendant:** | yeah, pretty big—too bad he is uncut and has hair |
| 5 | Wolf: | yup |
| 6 | | But the fact that he is a 7th grader in my school erased everything I |
| 7 | | didn't like about it and made it super-hot anyway |
| 8 | | |
| 9 | **Defendant**: | haha – for sure – still great |
| | | No face and dick in the same pic?... |
| 10 | Wolf: | [Sends now empty image file] |
| 11 | | This is the most he showed of both at the same time |
| 12 | **Defendant:** | he is cute - i'd fuck him |
| 13 | | |
| 14 | Wolf: | [Sends now empty image files] |
| | | How about when he was 11? 😊 |
| 15 | | |
| 16 | **Defendant:** | and not shy at all – that's a bonus |
| | | Damn that's perfect |
| 17 | | |
| 18 | Wolf: | very yummy |
| 19 | | [Sends series of now empty image files] |
| 20 | **Defendant:** | damn, he went all out - that is so hot for you -- knowing that kid – |
| 21 | | we need to rape him |
| 22 | Wolf: | my dick needs to fill one of his holes |
| 23 | | Last thing he sent 😊 |
| 24 | | [Sends now empty image file] |
| 25 | **Defendant:** | is it bad that after we rape him, i kind of want to circumcise him |
| 26 | | |
| 27 | Wolf: | nope |
| 28 | | |

- 6 -

|   |   |   |
|---|---|---|
| | | I wish he had pulled down the skin to show what's underneath… I bet it's nice under there |
| **Defendant:** | | yeah my thoughts too – I guess there is no chance alex [co-conspirator Strange] can get more from him? Love to see his ass too |
| **Wolf:** | | only if he comes back for more<br>He blocked him then unlocked and did more… then blocked again |
| **Defendant**: | | gotcha—he could be a good one for blackmail |
| **Wolf:** | | yes! |
| **Defendant:** | | i think it would be funny to threaten them with the names of some of his teachers - saying the videos would be sent to them unless he does "whatever" |
| **Wolf:** | | wish I could see his reaction when that would happen<br>And read his thoughts<br>Freaking out<br>Weighing his options |
| **Defendant:** | | right, exactly -- or even have alex tell him his parents names (if you know them) - that could freak him out too |
| **Wolf:** | | yeah I could get that easily<br>I wonder if he would think that it was his friends pranking him tho |
| **Defendant:** | | yeah that's true – but he is dumb right? |
| **Wolf:** | | yeah he's a pretty weak student<br>Not sure how he is with common sense/street smarts whatev |
| **Defendant:** | | could just tell him it is being sent around to some boys in the school – that could freak him out<br>i don't know - just thinking out loud in order to get more:) |
| **Wolf:** | | exactly<br>I think alex can try again with his second account too |

Case 2:24-mj-05237-DMF   Document 6   Filed 07/25/24   Page 8 of 17

|   |   |   |
|---|---|---|
| 1 |  | We'll see |
| 2 | **Defendant**: | cool – thanks for sharing him – hopefully we can share him in another way |

In addition to Wolf's students, the group also targeted boys who played in the 2021 Little League World Series (LLWS) for victimization. The defendant and Wolf began discussing the LLWS players in September 2021, and the defendant told Wolf that he "gave [Strange] the list of players to go after." On September 10, 2021, the defendant and Wolf traded images of child pornography depicting two identified LLWS players (then age 12) exposing their genitals and masturbating and engaged in the following exchange:

**Defendant**: [Sends now empty image file]
That's another from [identified minor victim from 2021 LLWS] to

**Wolf**: 😊 what a perfect dick and pubic area

**Defendant**: yup – and you can tell he has never cum – doesn't know how to

jerk – perfect

**Wolf**: I saw their stats online. 5'2" 90-92 pounds

**Defendant**: perfect, right…

**Wolf**: Ty!
After drooling at my TV all these years watching LLWS, to have

now seen a couple of boys like this… mmmm

**Defendant**: lol – for sure – I'm hoping this becomes a yearly activity!!
…

**Defendant**: … funny thing is, I'm talking with the pitcher, [minor victim's name] as well – he is not talkative at all – barely get a reply every other day

- 8 -

| | | |
|---|---|---|
| **Wolf:** | | still fun to know you are talking to him though. Didn't know you were talking to any boys! You talking with any of the others? |
| **Defendant**: | | just started – I've sent some messages to other little league boys but don't really get any responses – just having fun |
| **Wolf:** | | Did you make a fake acct I assume |
| **Defendant:** | | yeah had one for awhile |

In addition to the files described above, the video and image files where content is viewable include at least four videos depicting a 7-year-old boy with his penis and anus exposed being masturbated by an adult's hand.

      The defendant's child exploitation activity has not been limited to his communications with Wolf and Strange. During this investigation, FBI uncovered at least four CyberTips from various electronic service providers to the National Center for Missing and Exploited Children (NCMEC) regarding accounts associated with the defendant uploading or exchanging child sexual abuse material. One of these was a Twitter account used as recently as 2023, which was subscribed to the defendant's phone number and used IP addresses subscribed to the defendant at his residence and place of employment. Using this Twitter account, the defendant purported to be a 12-year-old boy, exchanged child sexual abuse material with other Twitter users via direct messages, and solicited child sexual abuse material from other users. One of these users has been identified as a minor boy who resides in the Eastern District of Pennsylvania.

      On February 21, 2024, FBI executed a federal search warrant at the defendant's residence in Gilbert, Arizona, and seized the defendant's iPhone from his person. The iPhone was forensically examined. The iPhone was set up on January 3, 2024. In an overall self-serving statement, the defendant told FBI that he destroyed his old cell phone by *smashing it with a hammer* for no particular reason. The device phone number is the defendant's longtime phone number, associated with the CyberTips described above. Most importantly, the phone contained Instagram login data for the "steph_turner_2006" account

and the unique Instagram user ID associated with that account, a screenshot of which the defendant shared with Wolf via Telegram as his own fake minor girl persona account, which led to the defendant's identification as Baseball Fun. The last update date for that account was October 10, 2021 (three days after Wolf's arrest). The phone also contained login information for an IPVanish VPN account. Within the Apple Keychain passwords, the username associated with this IPVanish account was the full name of one of the defendant's former youth baseball players. Notably, the screenshot that Baseball Fun sent Andrew Wolf of his "Steph_Turner_2006" Instagram baiting account depicted an IPVanish logo in the taskbar.

The phone contained one thumbnail image from the photos application that appears to depict child pornography with a creation date of February 5, 2022, as well as some other age-difficult material, and at least 200 images of child erotica, to include images of minor boys wearing bathing suits and posing for shirtless photos. The phone contained hundreds of videos and images of the LLWS, primarily of the 2023 Needville, Texas team. These included cached images of the players' bios, listing their names, photos, numbers, and fun facts.

The phone contained the following Safari history of note:
- Multiple visits to the URL for the Instagram profile of one of the LLWS players that the defendant told Wolf he was talking to using his minor girl persona as early as September 2021
- Help on your suspended Twitter account, 8/22/22
- How to delete a suspended Twitter account, 8/22/22
- Instagram's age verification keeps teens from pretending to be adults – The Washington Post, 10/15/22
- Virtual telephone number for calls and SMS services, 10/15/22
- Does Instagram notify when you screen record video calls, 11/25/23
- Can you send private messages on TikTok without having an account? 12/1/23
- Can you direct message TikTok accounts you don't follow, 12/1/23
- Simple ways to send messages on TikTok without a phone number, 12/1/23

The phone also contained Google searches of interest, such as:

- Tortolita middle school, 7/20/22
- Needville junior high, 11/9/23
- Needville high school football, 11/24/23
- If you are in facetime does it show a screenshot on Instagram, 11/25/23
- Can you sign up for tiktok without a phone number, 12/1/23
- Can you dm on tiktok, 12/1/23
- Needville middle school, 12/1/23
- Needville junior high, 12/1/23
- How to remove cache from Instagram iphone, 2/2/24
- Woodinville high school baseball schedule, 2/20/24

The Telegram application was not currently installed on the device, but the phone contained log entries of cellular network data usage from the Telegram application. The phone also contained an iCloud Keychain for Telegram.

In addition to the "Steph_Turner_2006" Instagram account discussed above, the defendant's iPhone also contained Instagram login data for at least 18 other unique Instagram user IDs, most of which had girls' names as the usernames. One of these was "chole_greens14," last updated on December 24, 2023, for which FBI obtained a federal search warrant. This account was registered using the defendant's phone number and used IP addresses subscribed to the defendant at his residence. The account contained at least 46 files of child pornography, 10 of which were from the account holder to other users and depicted an unknown minor girl. The remaining files were sent by minor boys to "Chloe." "Chloe" purported to be a minor girl anywhere between 12-14 years old, depending on the age of the boy with whom she was communicating. "Chloe" told the boys with whom she was communicating that she was from South Carolina and was a Washington Nationals baseball fan. Notably, in communications with one boy, "Chloe" sent him a photograph of her cat--- the cat is the defendant Donald Michael's cat, as captured in search warrant photographs taken on February 21, 2024, and the cat is sitting on a bed, which has an identical frame to Donald Michael's bed. The same image of the cat sitting on the bed was located on Michael's iPhone with a creation date of April 19, 2020.

Based on "Chloe's" direct messages with several minor boys, FBI Philadelphia has identified additional victims of the defendant. Since May 2024, FBI Philadelphia has sent

eight additional leads to have these boys identified and interviewed. To date, three of the boys have been confirmed as victims, and two of those three have been forensically interviewed.

### 2. **Maximum Penalties**

The defendant faces a maximum penalty of 110 years' imprisonment with a mandatory minimum term of 15 years, a minimum 5 years up to a lifetime of supervised release, along with various financial penalties and assessments. The defendant's estimated sentencing guideline range calls for a life sentence, significantly higher than the mandatory minimum 15 years' imprisonment.

### 3. **Criminal History**

If convicted, the defendant faces a 15-year mandatory minimum sentence and sentencing guidelines that call for a life sentence, having never before served a prison sentence. The prospect of this lengthy sentence gives the defendant every incentive to flee.

### 4. **Employment/Community Ties**

The defendant has no ties to the Eastern District of Pennsylvania. The location of the Court in EDPA where the defendant will be required to appear is approximately 2,400 miles away from his residence, requiring a flight or more than 35 hours driving one-way through several states to appear in court as required. The defendant's lack of community ties to EDPA, where he is charged with very serious crimes, significantly increases his risk of flight should he be released pending trial.

As discussed above, the defendant also engaged in deceitful online activity from at least as early as 2020 by misrepresenting his identity as a minor teenage girl or boy on various social media applications, rather than the adult man that he is, and by assisting other sex offenders to do the same, in a clear attempt to gain access to more minor boys to victimize.

The defendant is not currently employed as far as the government knows. Records obtained from the defendant's previous employer reflect that he was terminated in June 2023 for misconduct related to compensation/wage fraud.

**B.     LEGAL ARGUMENT**

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. §§ 2251(a) and 2252(a)(2). This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders). A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986).

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the

defendant is released because there is no way to effectively monitor his compliance with such a condition.  Only a 24-hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, there is no way to effectively monitor this defendant's online access to children and other sexual predators, for the following reasons:

(1) Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices.  There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2) Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate.  There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3) There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4) Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether.  The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities.  Pre-Trial Services is limited to inspection of items that are in plain view of the officers.  Nor is Pretrial Services permitted to seize electronic evidence.  The fact that the defendant has no ties to EDPA further hinders the ability of Pretrial to supervise him because he would likely be supervised outside the district in which he is charged.  "The ubiquitous presence of the internet and the all-encompassing nature of the

information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the Internet). Accordingly, the government requests that the defendant remain in custody pending trial.

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. The defendant has victimized hundreds of children via the Internet. Through his involvement in the conspiracy outlined above and his ongoing child exploitation activities, he has already demonstrated that he is willing to engage in deceit to get what he wants— access to boys – which suggests he would be even more difficult to monitor on pretrial release. There is simply no way to adequately monitor this defendant should he be released, nor any way to ensure compliance with any conditions this Court may impose, to eradicate the danger he poses to children in the community. Only a 24-hour watch provided by the Bureau of Prisons will ensure that the defendant does not endanger the public.

Moreover, prison is a certainty for this defendant if convicted of these crimes– he faces a mandatory minimum of 15 years' imprisonment, and sentencing Guidelines call for an even higher sentence of life imprisonment. The anticipation of this severe sentence gives the defendant every incentive to flee, knowing that he will spend a significant period of time in prison. The defendant's lack of ties to the Eastern District of Pennsylvania significantly increases his risk of flight. In addition, the prospect of this lengthy prison

sentence makes him even more of a danger to children in the community, knowing that his release on bail may be the last time he is free in many years, if ever.

**C.   CONCLUSION**

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court to detain this defendant prior to trial.

Respectfully submitted this 25th day of July, 2024.

GARY M. RESTAINO
United States Attorney

*/s/ Gayle L. Helart*
GAYLE L. HELART
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Madeline Mayer, *Attorney for Defendant*.


*s/ Lynne Hughes*
U.S. Attorney's Office